**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG**

**RONNIE MITCHELL HUNT,**

        **Plaintiff,**

**v.**                                     **CASE NO. 6:12-cv-1154**

**MICHAEL J. ASTRUE[1],**
**Commissioner of Social Security,**

        **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are a Complaint for this Court to review the decision (ECF No. 2), a Brief in Support of Judgment on the Pleadings (ECF No. 10), and Brief in Support of the Defendant's Decision (ECF No. 11).

Plaintiff, Ronnie Mitchell Hunt, ("Claimant"), filed applications for DIB and SSI on April 13, 2008, alleging disability beginning October 10, 2007.  (Tr. at 204-207)  Claimant alleges degenerative disc disease, scoliosis, chronic obstructive pulmonary disease (COPD),

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Carolyn W. Colvin is automatically substituted as the defendant in this action.

depression, anxiety, borderline intellectual functioning (BIF) and back pain with radiation in left lower extremity. The claims were denied initially and upon consideration. (Tr. at 91-93, 100-102) Claimant filed a request for hearing on January 24, 2009. (Tr. at 103-104) Claimant appeared via video hearing from Parkersburg, West Virginia, held on December 7, 2009. The hearing adjourned with the ALJ ordering a consultative psychological examination. (Tr. at 66) On March 1, 2010, Claimant submitted additional evidence, West Virginia Disability Determination Service examination identified as 16F. (T. at 282, 423) On July 28, 2010, Claimant appeared at a supplemental video hearing in Parkersburg, West Virginia. The hearings were held before Administrative Law Judge ("ALJ") Valerie A. Bawolek. (Tr. at 45, 88) By Notice of Decision dated August 27, 2010, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 30-45)

Claimant filed a Request for Review of Hearing Decision/Order on September 22, 2010. The Appeals Council received additional evidence submitted by Claimant and made the new evidence a part of the record as Exhibit 16B. The additional evidence was a Critical/Dire Need Request dated September 9, 2011. (Tr. at 2)

Claimant's Request for Review was denied on October 17, 2011. (Tr. at 21) On October 27, 2011, Claimant requested an extension of time to provide additional evidence and to submit legal arguments. (TR. at 17) On February 17, 2012, the Appeals Counsel set aside the earlier decision rendered on October 17, 2011, to review the reasons Claimant disagreed with the ALJ's decision, Claimant's brief objecting to the decision and the additional evidence. (Tr. at 287-291) Appeals Council denied Claimant's Request for Review. (Tr. at 1-3) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review. (*Id.*)

Claimant now appeals the ALJ's decision, which is the final determination of the Commissioner, by filing a Complaint, dated April 16, 2012, seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).  (Complaint, ECF. No. 2)  Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  *See* <u>Blalock v. Richardson</u>, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2012).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  *Id.* § 404.1520(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  *Id.* § 404.1520(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  *Id.* § 404.1520(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *Id.* § 404.1520(d).  If it does, the claimant is found disabled and awarded benefits.  *Id.*  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  *Id.* § 404.1520(e).  By satisfying the fourth inquiry, the claimant establishes a *prima facie* case of disability.  <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. § 404.1520(f) (2012).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

        In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 32) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease, scoliosis, chronic obstructive pulmonary disease (COPD), depression, anxiety and borderline intellectual functioning.  (Tr. at 32)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 34)  The ALJ then found that Claimant has a residual functional capacity (RFC) for sedentary work, reduced by nonexertional limitations.  (Tr. at 36)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 43)  However, the ALJ concluded that Claimant could perform jobs such as assembler, hand packer and price marker, which exist in significant numbers nationally and regionally.  (Tr. at 44)  On this basis, benefits were denied. (Tr. at 45)

Scope of Review

        The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case does not apply the correct legal standard.

<u>Claimant's Background</u>

Claimant was born on December 2, 1962, and was forty-four years old at the time of the administrative hearing. (Tr. at 205)  He graduated from Wirt County High School with an average grade of 87.  (Tr. at 280-281)  He worked as a truck driver.

<u>The Medical Record</u>

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it briefly.

Complainant asserts that he became unable to work as of October 10, 2007 due to degenerative disc disease, scoliosis, chronic obstructive pulmonary disease (COPD), depression, anxiety and borderline intellectual functioning.  Complainant has sought treatment for lower back pain from his treating physician, Janak R. Patel, M.D. since approximately May 5, 2004. (Tr. at 292-304)  Camden-Clark Memorial Hospital's Department of Radiology performed a lumbar spine exam on Claimant. The radiologist's notes stated "The lateral projection shows extensive degenerative changes of the body and facets at the L2/3 3/4 and 4/5 levels with a transitional last lumbar vertebra.  There is almost total loss of disc space at the 2/3, 3/4 and 4/5

levels."  (Tr. at 303)  The radiologist's notes also stated that the exam "shows severe scoliotic deformity of the lower thoracic and upper lumbar spine convexity to the left."  *Id.*

On December 24, 2004, Dr. Patel obtained an MRI that showed degenerative disc disease and scoliosis.  (Tr. at 292-294)  On January 25, 2005, Dr. Patel referred Claimant to see neurological consultants, Dr. Rammy Gold and Erin N. Strcula, PA-C.  (Tr. at 305)  During the January 2, 2005, appointment with the neurological consultants, Claimant stated that his back pain is "constant, aching, and sharp at times."  (*Id.*)  Claimant rated his pain as a 10 on a scale of 1 to10, with 10 being the highest in the pain-rating scale.  Claimant informed the neurological consultants that he had been braced and seen by a chiropractor in the past which offered him no relief.  Upon reviewing the MRI, the neurological consultants noted that the lumbar spine showed degenerative scoliosis with multiple levels of lumbar canal stenosis and neural foraminal encroachment throughout his lumbar spine.  It was also noted that this appears to be most severe at L4-5 on the left.  There was a L1 compression fracture present.  (Tr. 305-307)

In 2008, Dr. Patel administered three epidural blocks.  (Tr. at 310-327)  The last of which was administered on May 1, 2008.  In the Report of Operation for an epidural block on May 1, 2008, Dr. Patel states that an indication for the procedure is that the Claimant was "injured while riding an ATV recently."  (Tr. at 310-327)

At the request of the State, Dr. Rakesh Wahi performed a consultative examination on Claimant on July 23, 2008.  (Tr. at 345-348)  West Virginia Disability Determination Service's consultative exam by Dr. Wahi concluded that Claimant has scoliosis and degenerative joint disease in the lumbar spine.  Dr. Wahi's opinion stated:

> The claimant suffers from significant symptomatology related to the degenerative joint disease in the lumbar spine, which is accompanied by mild scoliosis.  The claimant's allegations are addressed by objective evidence of limping.  The claimant also has

> decreased sensation in his lower extremities from the knee down, which suggests compressive symptoms. The claimant is able to carry out some of his activities of day-to-day living but requires help in dressing himself and bending. He is unable to lift anything because of the back pain. (Tr. at 348)

The ALJ gave "some weight" to the observations, diagnoses and opinions of Dr. Wahi. (Tr. at 38)

Dr. Kalapal Seshagiri Rao, Board Certified Physician Medicine & Rehabilitation, examined Plaintiff on a number of occasions, beginning on May 2, 2008. Dr. Rao is Claimant's treating pain specialist. Dr. Rao's notes state that Claimant has "back pain almost every day." On May 2, 2008, Dr. Rao's notes on Claimant's history state that Claimant was involved in an ATV accident the prior week. (Tr. at 381) On March 6, 2009, Dr. Rao notes that Claimant's pain increases with prolonged standing and sitting, bending, lifting and twisting.

On August 27, 2008, a State agency disability examiner determined that Claimant could perform work at a light exertion level with postural restrictions. (Tr. at 259) The disability examiner noted that "The claimant's reported functional limitations are consistent with his allegations and supported by the medical evidence in file. He is found to be credible." The disability examiner listed three light level jobs that he opined Claimant could perform. The three light level jobs stated were sales attendant, information clerk and mail clerk. On October 29, 2008, a different State agency disability examiner determined that Claimant could perform work at a light level of exertion with postural restrictions. (Tr. at 263) The same three light level jobs were stated: sales attendant, information clerk and mail clerk. The ALJ gave "little weight" to the State agency disability examiners' opinions, finding the opinions "inconsistent with more the complete and current evidence now of record." (Tr. at 41)

On April 10, 2009, Holly Freed, M.D., Claimant's treating physician for anxiety and depression, completed a medical assessment form and opined Claimant was unable to work for at least one year due to severe pain.  (Tr. at 40, 399-401)  The assessment form contained a section for comment regarding Claimant's ability to work full-time at his customary occupation with his incapacity/disability.  Dr. Freed responded in the form section, no, "severe pain limits movement and prolonged sitting."   The assessment form also contained a section for comment regarding Claimant's ability to perform other full-time work.  Dr. Freed responded in the form section, no, "severe pain, needs further diagnosis and treatment."   The assessment requested the duration of the inability to work full-time.  Dr. Freed responded, "at least one year, greater if unable to obtain effective treatment."  (Tr. at 400)  The ALJ gave "little weight" to this treating physician as the SLJ considered it inconsistent with other evidence of record. (Tr. at 40)

In a Medical Assessment of Ability to do Work-Related Activities (Physical) form completed on November 2, 2009, Dr. Cristina Estrada opined that Claimant is impaired in lifting/carrying.  Dr. Estrada reported that Claimant could lift/carry a maximum of 50 lbs. "from very little up to 1/3 of an 8-hour day and could lift/carry a maximum of 20 lbs. from 1/3 to 2/3 of an 8-hour day."  (Tr. at 416)  Dr. Estrada assessed that Claimant can sit for a total of 5-hours per an 8-hour work day and is limited to standing/walking to 1-hour per 8-hour work day.  (Tr. at 416-417)  Dr. Estrada further indicated that Claimant's manipulative functions of reaching all directions, fingering, and feeling were not limited by the impairment.  (Tr. at 418)  Dr. Estrada noted that Claimant has limited hearing in both ears.  The ALJ gave "minimal weight" to the opinion of treating physician, Dr. Estrada, because the ALJ considered the opinion "is not wholly consistent with the stronger evidence of record.   While the doctor does have a treating

relationship with the Claimant, the treatment history is quite brief and the Claimant's purpose, at least in part, was to obtain his disability benefits." (Tr. at 40)

Two impartial medical experts and a Vocational Expert testified at the December 7, 2009, hearing.   Jeffrey Boggess, Ph. D., an impartial medical expert, testified that Claimant's depression and anxiety is secondary to pain.  Dr. Boggess testified that Claimant has moderate limitations in his concentration and his pace.  (Tr. at 62-63)  The ALJ gave "great weight" to the opinion of Dr. Boggess, who had reviewed Claimant's records.  (Tr. at 2)

Judith Brendmuehl, M.D., an impartial medical expert, testified at the hearing on December 7, 2009, after reviewing the Claimant's records.  (Tr. at 41-2)  Dr. Brendemuehl concluded that due to Claimant's long-standing history of back pain due to degenerative scoliosis and mild to moderate COPD, Claimant was limited to light work with postural and environmental limitations.  Dr. Brendmuehl testified that she would restrict Claimant from ever working with ladders, ropes, scaffolds.  She would restrict Claimant to occasional ramps and stairs and limited pushing and pulling with the lower extremities.  Claimant should not have concentrated exposure to heat, cold, vibrations, hazards and pulmonary irritants. (Tr. at 41, 60-61)

Olin Dodd, a vocational expert (VE), testified at the December 7, 2009, hearing.  Mr. Dodd testified that the occupation of truck driver is considered semi-skilled and is performed with medium exertions.  The position of truck driver required Claimant to push and pull with his lower extremities.  (Tr. at 43)

In a West Virginia Disability Determination Service exam on February 2, 2010, John J. Kampsnider, PH.D. notes that Claimant lost his job as a truck driver in October 2007 following an arrest for Driving Under the Influence (DUI) and his driver's license subsequently being

revoked.  (Tr. at 424)   Dr. Kampsnider diagnosed Claimant with dysthymia, borderline intellectual functioning and reported degenerative disks at back and leg pain.  (Tr. at 427)  The ALJ gave "great weight" to Dr. Kampsnider's observations, opinions and diagnoses.  (Tr. at 41)

In a Medical Assessment of Ability to do Work-Related Activities (Physical) form completed on July 27, 2010, Dr. Rao opined that Claimant is impaired in lifting/carrying.  Dr. Rao reported that Claimant could lift/carry a maximum of 15-20 lbs. "from very little up to 1/3 of an 8-hour day and could lift/carry a maximum of 10 lbs. from 1/3 to 2/3 of an 8-hour day." (Tr. at 433)  Dr. Rao assessed that Claimant can sit for a total of 2-hours per an 8-hour work day. Dr. Rao assessed Claimant's impairment to standing/walking to be limited to 30-minutes.  (Tr. at 433-434)  Dr. Rao further indicated that Claimant should not perform the postural activities of climbing, balancing, stooping, crouching, kneeling and crawling.  (Tr. at 434)  He also found that Claimant's manipulative functions, such as reaching all directions, fingering, and feeling are limited by the impairment.  (Tr. at 435)  Dr. Rao limited Claimant to sedentary exertion.  The ALJ gave substantial weight to the examination findings of treating physician, Dr. Rao, but only minimal weight to the ALJ's assessment of the claimant's capacity.

At the hearing on July 28, 2010, Dr. Brendemuehl opined that Claimant's objective source of pain and degenerative scoliosis doesn't meet or equal any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  *See*, 20 C.F.R. § 404.1520 (2012).  (Tr. at 42)   Dr. Brendemuehl stated that Claimant should be limited to standing and walking for 2-hours of an 8-hour workday.  Claimant could work at "bench level."  (*Id.*)   She stated overhead reaching should be restricted and pulling and pushing with the lower extremities and overhead reaching is totally precluded.  (*Id.*) The ALJ gave "great weight" to Dr. Brendmuehl's opinion because "it is consistent with the record as a whole."  (*Id.*)

Joseph Carver, PH.D., an impartial medical expert, testified upon reviewing the record and found that it indicated Claimant suffers from depression.  Dr. Carver opined that Claimant's "social limitations would limit him to occasional contact with public and supervisors and he should not work with 'fast moving equipment.'"  (Tr. at 2)  The ALJ gave "great weight" to his opinion as "it is consistent with other evidence of record."  (*Id.*)

The ALJ asked an impartial vocational expert, Harry Tanzey, at the July 28, 2010, hearing, to consider a hypothetical person with Claimant's age, education and work experience. The hypothetical person is limited to sedentary work, unable to ever climb ladders, ropes, or scaffolds, unable to ever kneel or crawl and can only occasionally climb stairs and ramps, balance, stoop and crouch.  The hypothetical person needs to work at bench level, without bending to extremes. The person must avoid concentrated pulmonary irritants, extreme heat and cold, vibrations, and hazards including dangerous machinery.  The person should only have occasional contact with the public and supervisors.  The person can only occasionally push and pull with his lower extremities.  The person must have a sit/stand option at will.  The hypothetical person is limited to simple or detailed work with moderately impaired concentration and intellectual function. The ALJ questioned VE Tanzey regarding what appropriate jobs could the hypothetical person perform.  (Tr. at 84-85)   VE Tanzey stated the hypothetical individual with Claimant's RFC and limitations could perform occupations such as assembler, hand packer and price marker.   He went on to testify that DOT[2] does not cover the sit/stand option at will and his analysis was based on his personal job analysis.  (*Id.*)  Although the ALJ realized VE Tanzey's testimony was partially inconsistent with information in the DOT, the ALJ found VE's Tanzey's testimony persuasive.  The ALJ's stated "Mr. Tanzey explained that the DOT does not

---

[2] DOT refers to the Dictionary of Occupational Titles, published by the United States Department of Labor, a source recognized by the regulations at 20 C.F.R., Pt. 404, Subpt. P, Appendix 2 § 200.00(b) (2012).

include a sit/stand option and his testimony is based on his personal job analysis, review and study of other expert opinions." (Tr. at 44)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Complainant's appeal asserts that:

(1)     the ALJ violated SSR 00-4p by failing to resolve the conflict between the VE's testimony and the DOT. The VE's testimony that the claimant, who is limited to sedentary work, could perform the light assembler job identified at the hearing is not consistent with the DOT. Further, the VE's testimony that the plaintiff, with certain postural and environmental limitations, could perform the assembler, hand packer, and price marker jobs is inconsistent with the DOT;

(2)     the ALJ committed reversible error by failing to consider the State agency consultant's findings that the plaintiff was credible; and,

(3)     the ALJ failed to comply with 20 C.F.R. § 404.1527 by failing to accord adequate weight to the opinion of the plaintiff's treating physicians, Dr. Christina Estrada and Dr. Kalapala Rao.

*See*, Plaintiff's Brief in Support of Judgment on the Pleadings, ECF No. 10.

The Commission argues that substantial evidence supports the ALJ's finding that the VE identified work that Claimant could perform despite the limitations posed in the ALJ's hypothetical question; the ALJ complied with Regulations in assessing the credibility of Claimant; and the evidence of record supports the ALJ's assessment of Claimants Residual Functional Capacity.

The Court recommends that the District Court remand Claimant's case to the Commissioner because the ALJ did not provide a sufficient analysis and explanation of the inconsistency between DOT and VE Tanzey's testimony. SSR 00-4p[3] addresses resolving conflicts in occupational information. The Social Security Ruling states:

---

[3] Social Security Ruling 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions.

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

Vocational Expert Tanzey testified at the administrative hearing that the DOT does not cover the ALJ's hypothetical sit/stand option.  (Tr. at 85)  The ALJ asked the VE if the VE's testimony is based on his experience and other vocational expert publications.  (*Id.*)  The VE responded, "Just pertaining to the sit/stand option.  Everything else is compatible."  The ALJ did not sufficiently perform her duty as adjudicator by failing to elicit a reasonable explanation for the conflict of occupational information between the VE and DOT.

The hypothetical person presented by the ALJ to the VE at the administrative hearing was limited to working at the sedentary exertion level and working at bench level.  However, the VE testified that the plaintiff could perform the assembler job.  An assembler job under DOT # 729.384-010 is a light exertion position.  The Claimant, as well as the ALJ's hypothetical person, is limited to sedentary work.  The ALJ did not inquire on the record about this inconsistency.

The ALJ is under an affirmative duty to inquire into conflicts between the VE's testimony and the DOT.  *See* Haddock v. Apfel, 196 F.3d 1084, 1087 (4th Cir. 1999) ("We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the

exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles and elicit a reasonable explanation for any discrepancy on this point."); *see also* <u>Oxedine v. Halter</u>, 181 F. Supp. 2d 570, 573-75 (E.D.N.C. 2001).

The Court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the ALJ and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *See*, <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Falco v. Shalala</u>, 27 F.3d 160, 163 (5th Cir. 1994); <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990). Absent from the ALJ's decision is the legal analysis required in the event the VE's testimony conflicts with the DOT.  Therefore, this Court finds that the correct legal standard was not applied.

Because the Court has recommended remand based on the ALJ's failure to elicit, on the record, a reasonable explanation for the conflict in occupational evidence provided by the VE and DOT, the Court need not address Claimant's arguments that the ALJ committed an error by failing to consider the State agency consultant's findings, that the Claimant was credible and that the ALJ failed to accord adequate weight to the opinion of Claimant's treating physicians.

<u>Conclusion</u>

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the District Court DENY Plaintiff's Complaint and Brief in Support of Judgment on the Pleadings, DENY Defendant's Brief in Support of the Defendant's Decision, REVERSE the final decision of the Commissioner, REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the

provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

August 12, 2013
Date

Dwane L. Tinsley
United States Magistrate Judge

15